IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

MARY E. RODRIGUEZ, )
)
        Plaintiff, )
)
v. ) Case No. CIV-17-125-SPS
)
COMMISSIONER of the Social )
Security Administration, )
)
        Defendant. )

## OPINION AND ORDER

The claimant Mary E. Rodriguez requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-five years old at the time of the administrative hearing (Tr. 38). She completed high school, and has no past relevant work (Tr. 31, 225). The claimant alleges she has been unable to work since her application date of August 28, 2014, due to depression, anxiety, a messed-up head mentally, and restless leg syndrome (Tr. 224).

**Procedural History**

On August 28, 2014, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated January 12, 2016 (Tr. 20-33). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, sit and stand/walk six hours in an eight-hour workday, and she could frequently climb ramps, stairs, ladders, ropes, and scaffolds. Additionally, she found that the claimant could perform simple, routine, and repetitive tasks; occasionally interact with supervisors to receive work instructions; could work in proximity to co-workers but have

no more than occasional direct interaction with them; and could never interact with the general public (Tr. 25). The ALJ thus concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *e. g.*, bottling attendant, small product assembler, and inspector packer (Tr. 31-32).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly assess and account for the opinions of her treating psychiatrist, and (ii) failing to properly assess her credibility. Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of obesity, depression, anxiety, and borderline intellectual functioning, as well as the non-severe impairment of hypertension and the non-medically-determinable impairment of restless leg syndrome (Tr. 22). The relevant medical evidence reveals that the claimant received mental health treatment at Carl Albert Community Mental Health Center, where she received treatment from nurse practitioner Mary Secrist and Dr. Teresa Farrow, M.D. The claimant was treated for depression and anxiety, and also reported hallucinations, mostly auditory but also visual "on a daily basis, but not all the time" between February and September 2014 (Tr. 308-313).

In March 2015, Dr. Farrow completed a Medical Source Statement ("MSS") as to the claimant's mental impairments, indicating that the claimant had extreme limitations in the ability to understand and remember detailed instructions, carry out detailed instructions,

-4-

respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting (Tr. 359-360). Additionally, she indicated that the claimant had five marked limitations related to simple instructions and decisions, and interacting with others, and a moderate limitation as to understanding and remembering short, simple instructions (Tr. 359). She stated that the claimant's diagnoses included bipolar disorder, severe, with psychotic features; generalized anxiety disorder; personality disorder; polysubstance abuse in complete remission; and borderline intellectual functioning (Tr. 360). Additionally, she stated that the claimant's attention and concentration were poor so that she cannot maintain attention for work, and that her anxiety and depression are severe, so that she cannot maintain a normal workweek (Tr. 360). By July 2017, Dr. Farrow's treatment notes stated that the claimant's mood stabilization was better, her depression and anxiety were better but she still had issues, and she still had some hallucinations but they were rare (Tr. 363).

On November 2, 2015, Dr. Farrow completed a second MSS regarding the claimant's mental impairments, in which she indicated the claimant had the same four extreme limitations, just two marked limitations as to relating to supervisors and co-workers, and moderate limitations as to the other categories. She noted that the claimant would likely have good days and bad days but wrote that the claimant's "good days" are still not functional, continuing by saying that the claimant was "really unable to work" (Tr. 367-368).

On November 10, 2014, Dr. Marguerite Langille-Hoppe conducted a mental status evaluation of the claimant (Tr. 324). She administered the MoCA, a screening instrument

that assessed, *inter alia*, attention and concentration, and the claimant scored within the normal range of functioning on this assessment (Tr. 325). Dr. Langille-Hoppe assessed the claimant with persistent personality disorder with anxiety distress-moderate, as well as unspecified personality disorder with paranoid and borderline traits, noting that the lack of additional records or history made it difficult to specifically identify the personality disorder (Tr. 325).

State reviewing physician Edith King, Ph.D. reviewed the record and completed mental RFC assessments in which she found in Section I that the claimant was markedly limited in the ability to understand and remember detailed instructions and carry out detailed instructions, and moderately limited in the ability to interact with the general public (Tr. 117-118). She concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 119). On reconsideration, Dr. Stephen Scott, Ph.D. largely agreed, indicating in Section I that the claimant was markedly limited in the ability to understand and remember details instructions, and carry out detailed instructions, and that she was moderately limited in the ability to maintain attention and concentration for extended periods and interact appropriately with the general public (Tr. 133-134). Dr. Scott concluded that the claimant could understand, remember, and carry out simple instructions with routine supervision, could relate to supervisors and a limited number of co-workers on a superficial work basis, and could adapt to a work environment, but that she had moderate limitations in relating to the general public (Tr. 134).

In her written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. As to Dr. Farrow, the ALJ thoroughly summarized the treatment notes from Carl Albert Community Mental Health Center, then stated that such treatment records did not substantiate the claimant's claims that she could work because: (i) there were no records of hospitalization or episodes of decompensation; (ii) the three most recent treatment notes reflected improvement; (iii) her hallucinations were noted to be rare; and (iv) despite reporting trouble focusing and concentrating, treatment notes consistently reflected intact judgment, good insight, intact impulse control, intact recent memory, and good remote memory (Tr. 28). He then gave great weigh to Dr. Farrow's first MSS only to the point it reflected the claimant could not sustain work at a normal level such that she was unable to work with the general public, able to occasionally interact with supervisors as needed to receive work instructions, work in proximity to co-workers with occasional interaction with them, and able to perform simple, routine, and repetitive tasks (Tr. 28). However, she noted that Dr. Farrow's MSS was not consistent with her treatment records in which she noted improvements with regard to the claimant's hallucinations, nor was it consistent as to the claimant having poor concentration, where her treatment records noted fair concentration, logical thought process, intact judgment, and fair insight on multiple occasions (Tr. 289). ALJ Dexter then assigned little weigh to Dr. Farrow's second MSS because it was inconsistent with her first MSS with no new treatment records to justify it, it was inconsistent with the treatment records with regard to the claimant's ability to concentrate, and the statement that the claimant was unable to work was an issue reserved to the Commissioner (Tr. 29). ALJ Dexter than assigned some

weight to Dr. Langille-Hoppe's assessment, noting that although she did not address the claimant's ability to work around the public, co-workers, and supervisors, her diagnosis supported the RFC (Tr. 29-30). As to the claimant's credibility, the ALJ found there was no evidence in the record to support her purported limitations regarding walking, and there were no exams or treatment records that limited her with regard to lifting and carrying (Tr. 26-27). Additionally, she noted the claimant's reported hallucinations, but that there was no evidence in the record that the claimant showed medical signs of psychosis (Tr. 27). Ultimately, she found that the claimant was not disabled.

First, the claimant asserts that the ALJ erred in evaluating Dr. Farrow's treating physician opinion. Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree

to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "[s]he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation omitted], so it is "clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

In this case, the ALJ adequately discussed and analyzed Dr. Farrow's opinion, as set forth above. The Court finds that the ALJ *did consider* her opinion in accordance with the appropriate standards and properly concluded it was only entitled to some weight. The ALJ thus did not err in failing to include any additional limitations imposed by Dr. Farrow in the claimant's RFC, where the ALJ thoroughly and completely summarized the evidence and explained the inconsistencies, notes, and the reasons for her findings. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The ALJ specifically noted every mental health medical record available in the administrative record, *and still concluded* that she could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony

in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber*, 20 Fed. Appx. at 822 ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Essentially, the claimant asks the Court to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

The claimant also contends that the ALJ erred in assessing her credibility. Under the applicable standard at the time of the ALJ's decision, a credibility determination would be entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ could disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But the ALJ's credibility findings were required to be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility determination "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In

this case, the Court finds that the ALJ set out the appropriate credibility factors, and cited evidence supporting her reasons for finding that the claimant's subjective complaints were not believable to the extent alleged as described above, *i. e.*, the ALJ gave clear and specific reasons that were specifically linked to the evidence in the record. The ALJ therefore did not err in analyzing the claimant's credibility.[2]

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] The Court notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The Court finds that even under the new standard, the ALJ properly evaluated the claimant's credibility.